## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DONNELLE A. WEATHERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. WGC-08-362** |
| ) | |
| **7-ELEVEN, INC.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court and ready for resolution is Defendant's Motion *in Limine* (Document No. 27). Plaintiff has filed an Opposition (Document No. 30) and Defendant a Reply (Document No. 31). No hearing is deemed necessary and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2008).

Defendant asks the Court to preclude Plaintiff from introducing at trial any evidence demonstrating Plaintiff's alleged economic losses and damages resulting from his malicious prosecution claim. "Such evidence should be excluded from trial since Plaintiff failed to produce evidence of economic damages in discovery, he has failed to sufficiently show that he actually suffered economic losses and he cannot show a direct nexus between 7-Eleven's actions and any economic losses." Def.'s Mem. Supp. Mot. Limine ("Def.'s Mem.") at 1-2.

Defendant characterizes as "mere conjecture" Plaintiff's assertion of a lost management opportunity at Cracker Barrel due to his arrest based on the outstanding warrant stemming from Defendant's allegation of theft. "Besides the fact that he has failed to provide any documentation or testimony demonstrating that he was likely to obtain a management position,

1

he has not even provided evidence that a Cracker Barrel manager makes a salary of $45,000 -

$50,000 annually." *Id.* at 3.

Second, Defendant asserts any lost wages evidence should be precluded since Plaintiff is

unable to demonstrate that Cracker Barrel terminated him solely because of the outstanding

warrant from the State of Maryland. At his deposition Plaintiff testified, on the night of

December 19, 2006, he pulled his car out of a gas station without turning on the vehicle's

headlights. Observing this conduct a police officer instructed Plaintiff to pull over to the side of

the road. The police officer demanded identification from Plaintiff. When the police officer ran

a background check, the police officer discovered Plaintiff's driver's license was suspended.

The police officer further learned there was an outstanding warrant against Plaintiff. The police

officer placed Plaintiff under arrest. During the search of Plaintiff's vehicle the police officer

found marijuana. Defendant argues the outstanding warrant from the State of Maryland was not

likely the cause of Plaintiff's termination from Cracker Barrel. "[Plaintiff] overlooks the

possibility, if not likelihood, that his traffic violations and marijuana charges could have been

enough for Cracker Barrel to find a violation of its policy." *Id.* at 6.

Third, Defendant contends there is a lack of evidence demonstrating Plaintiff's

difficulties in obtaining a job, after his criminal case in Maryland was dismissed, were due to the

Maryland criminal charges. Defendant notes Plaintiff's inability to recall the names of any of

the companies he submitted applications to after the Maryland criminal charges were dismissed

and Plaintiff returned to North Carolina. "[Plaintiff] assumes that the Maryland trial is the

reason that he was unable to find a position based on the fact that none of the companies called

him back. Without more evidence, Plaintiff's assertions are speculative and insufficient to

support his claim." *Id.* at 7.

In conclusion, because Plaintiff has not produced during discovery lost income documentation, Defendant contends any such evidence should be precluded under Federal Rule of Civil Procedure 37(c)(1). Moreover, because Plaintiff cannot demonstrate a nexus between his alleged lost income and Defendant's conduct or actions, all such evidence of alleged lost income should be precluded.

In his Opposition Plaintiff asserts he provided evidence of his damages by his answers to interrogatories and his deposition testimony. Thus there is, Plaintiff contends, no violation of Federal Rule of Civil Procedure 37(c)(1). Plaintiff notes he provided detailed information to Defendant regarding lost income.

> I lost a job paying $9.35/hour plus tips. I was employed [at Cracker Barrel] for 3 years so from the date of 12/19/06 until I found a job 7/9/07, I lost a total of approximately $6545.00 (hourly) and approximately $2000.00 in tips totaling $8545.00.

Def.'s Mem., Ex. 1 at 4; Document No. 30-2 at 4 (Answer to Interrogatory No. 8).

> I had plans to transition into a management position and cannot due to the events. Managers start at approximately 45-50K per year. I believe I would have been earning this wage if I had not been arrested.

Def.'s Mem., Ex. 1 at 3; Document No. 30-2 at 3 (Answer to Interrogatory No. 7).

Plaintiff asks the Court to allow the jury to decide if the alleged lack of documentation outweighs Plaintiff's testimony. Plaintiff should not be precluded from testifying about his damages because such sworn evidence is admissible evidence. The various categories of losses and the amounts for these categories were disclosed to Defendant through Plaintiff's answers to interrogatories and deposition testimony; therefore, the admission of such evidence is not

prejudicial to Defendant.  "Plaintiff would be prejudiced if he were not allowed to attest to how he believes he was harmed."  Document No. 30 at 3.  Plaintiff asks that Defendant's motion be denied.

In its Reply Defendant reiterates that Plaintiff's lost management opportunity at Cracker Barrel is completely speculative, that Plaintiff's assertion that his termination by Cracker Barrel is attributable to Defendant is baseless speculation and that Plaintiff's contention that potential employers' failure to call Plaintiff after initial interviews because of Plaintiff's arrest and extradition to Maryland is speculative.  Because Plaintiff failed to produce documentation of lost income and further because Plaintiff cannot demonstrate those alleged losses are attributable to Defendant, such speculation should not be presented to a jury and rightfully should be excluded from trial.

<u>Analysis</u>

Federal Rule of Civil Procedure 37(c)(1) states in pertinent part,

> If a party fails to provide information . . . , the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The Court has reviewed Plaintiff's Answers to Defendant's Interrogatories and Document Requests.  *See* Def.'s Mem., Ex. 1; Document No. 30-2.  Only one document request appears relevant to the issue of lost income for the malicious prosecution claim.  Document

Request No. 4 sought,

> Any and all written material tending to support any claim for loss of earnings, or of earning capacity including but not limited to, lost wages statements, pay stubs, payroll records, W-2's, W-9's, 1099's and tax returns.

Def.'s Mem., Ex. 1 at 8; Document No. 30-2 at 8.

Plaintiff's response is "attached."  The Court does not know what, of the above listed documents, Plaintiff produced to Defendant.  Nor does Defendant advise the Court about the documents it received in response to Document Request No. 4.

All information Defendant has about Plaintiff's alleged lost income, according to Defendant, comes from Plaintiff's answers to interrogatories and Plaintiff's deposition testimony.  For instance during his deposition Plaintiff was questioned about his missed management opportunity.

> Q:  Your second bullet item [in your answer to Interrogatory No. 7] says you had plans to transition into management with Cracker Barrel.
>
> A:  Right.
>
> Q:  What training did you have for management?
>
> A:   I mean, I was – – I was training everybody that came.  I was training the MITs that came in the store.  I was there so long doing my job so well that, I mean, basically any new employees that came in, I was training them.  I mean, I was preparing myself.  I mean, they were just getting to – – things were beginning to move the way I wanted them to move.  So I was trying – – I was trying to get in there.
>
> Q:  Who was it that would have hired you?
>
> A:  Who would have?
>
> Q:  Yes.  As a manager.

5

A:  I mean – –

Q:  Or given you the promotion.

A:  It would have been my old manager.  His name is Ray.  And I don't know his last name.

Q:  Were there any document[s] he provided to you regarding a promotion to manager?

A:  No.  No.  There wasn't.  I mean, but the opportunity was there.

Def.'s Mem., Ex. 2 (Weathers Dep. 32:10 - 33:11).  The second bullet of Plaintiff's answer to

Interrogatory No. 7 states,

I had plans to transition into a management position and cannot due to the events.  Managers start at approximately 45-50K.  I believe I would have been earning this wage if I had not been arrested.

*Id.*, Ex. 1 at 3; Document No. 30-2 at 3.

Plaintiff's testimony, that there existed an opportunity to be promoted to a management

position and that he was trying to obtain a management position, is too speculative.  Plaintiff has

produced no documentation indicating he was slated for promotion nor has he identified an

individual or individuals from Cracker Barrel who would testify that Plaintiff would have been

promoted to a management position but for his arrest and incarceration in December 2006.

Defendant's request to exclude from trial any evidence concerning a lost management

opportunity at Cracker Barrel will be granted.

With regard to Plaintiff's contention that he was unable to find employment after the

Maryland criminal case was dismissed, Plaintiff testified about this matter during his deposition.

Q:  When you got back to North Carolina, when did you start looking for a job?

A:  Immediately.

6

Q:    Okay.  Where did you look?  Did you make applications to various companies?

A:  Yes, sir.

Q:  Where did [you] make application?

A:  I mean, I don't remember offhand.  But I mean, I did do a serious job search when I got out.  You got to work.

Q:  Can you give me some examples of places that you applied to?

A:    Generally, I mean, I applied there.  I applied – – I mean, honestly, I don't know.  I don't know.  I don't remember.

Q:  What kind of jobs did you apply for?

A:   Customer service, pretty much anything because I needed to work.  I didn't have any income coming in.  I applied for anything just trying to get a job.

Q:  What other types of work other than customer service were you looking at?

A:   Of course restaurant.  Let me see.  I mean, restaurant, call centers, working in retail stores, warehouse work, anything that was available.  Basically I just was looking for a job 'cause I was out of work since the 19th of December the year prior.

Q:   Did any of these companies that you applied to tell you they weren't going to hire you because of anything in your past?

A:  I mean, they wouldn't say anything like that.  They would just not give you a call back.  And that's pretty much what happened.

Q:  Well, how do you know that happened?

A:  Because I didn't receive a call back.

Q:   So based upon the fact that they didn't call you back, they decided they weren't going to hire you for something in your background.  Is that what you're saying?

A:  I mean, I'm not sure why they didn't hire me.  But I know they

7

> didn't hire me, and I didn't receive a call back.  The situation with
> Convergys was a little different.  They actually know about all this
> situation 'cause a friend of mine also works there.
>
> Q:   When you applied for these various positions, did you advise
> them that you had been arrested?
>
> A:  I mean, no.  I wasn't charged with – – I mean, I was charged, but
> I wasn't convicted of anything.  But I didn't advise them.  I just
> submitted applications.  I went on several job interviews.  It never
> came up during the conversation.

Def.'s Mem., Ex. 2 (Weathers Dep. 27:1 - 29:10).

Later during his deposition Plaintiff explained, despite the arrest warrant, Convergys

ultimately hired him.

> Q:   You said that the fact of the charges that were brought against
> you have been discussed with Convergys?
>
> A:   Right.
>
> Q:   How did that come up?
>
> A:   During the interview.  They were actually not going to hire me.
> And I had to explain to them the whole situation.  And I was blessed
> basically.  They went ahead and hired me.

*Id.*, Ex. 2 (Weathers Dep. 39:20 - 40:7).

Without more evidence, the Court finds as insufficient Plaintiff's deposition testimony.

No independent, corroborating evidence has been presented why these various employers did not

call back Plaintiff.  Reasons could range from Plaintiff being unqualified for a position,

overqualified for a position, lack of experience, his demeanor during the interview or his candor

or lack thereof on an application and/or during an interview.  Although Plaintiff testified that he

had to explain the "whole situation" to Convergys, a company which apparently was not going to

hire Plaintiff but ultimately did, no evidence has been presented demonstrating that Plaintiff's

non-disclosure of the "whole situation" to other prospective employers was the *sole* reason why Plaintiff was not hired.  If at trial Plaintiff testified consistent with his deposition testimony, the jury would need to speculate why these other prospective employers did not have follow-up interviews with Plaintiff or offer Plaintiff a job.  And, as Plaintiff concedes at his deposition, "I mean, I'm not sure why they didn't hire me."  *Id.*, Ex. 2 (Weathers Dep. 28:19 - 20). Defendant's request to exclude from trial any evidence suggesting Plaintiff was unable to secure employment after the Maryland criminal charges were dismissed will be granted.

Third, as part of his damages claim, Plaintiff asserts Cracker Barrel fired him solely because of the outstanding arrest warrant from Maryland.  Plaintiff testified about his termination during his deposition.

> Q:   When did you leave the employment of Cracker Barrel?
>
> A:    I was – – basically the night of the arrest.  I was – – I was terminated.  I don't know exactly when they terminated me.  But I was terminated because of the incident.
>
> Q:   When did you find out you were terminated?
>
> A:  Well, my mother let me know 'cause they went to go pick up my last check.
>
> Q:   Were you still in jail at the time?
>
> A:  Yes.  I was.
>
> Q:   What is your understanding of why you were terminated?
>
> A:    Well, basically I was told I was terminated because of Cracker Barrel policy which is if you damage their image, then you will be terminated.
>
> Q:   Do you know what specific conduct on your part damaged their image?

> A:   Being incarcerated.  In North Carolina, they – – they're not a right to work state.  They can fire you for pretty much anything there.

*Id.*, Ex. 2 (Weathers Dep. 25:1 - 21).  Later during the deposition Plaintiff explained how he

learned about Cracker Barrel's policy.

> Q:   You said that you were, "Separated from my family, friends.  I have lost friends close to me because many people do not want to associate with me due to the false charges."  Tell me a list of people who no longer want to associate with you because of the charges that were brought against you.

> A:   Well, first let's start with Chris Mercer.  He's the store manager for Cracker Barrel.  He's the one who initially told me about my – – well, about the policies of Cracker Barrel.  I did go back there to try to get my job back once the whole ordeal was over with.  And that's when I found out about the policy that they had.  So, I mean, that's really most important.

*Id.*, Ex. 2 (Weathers Dep. 34:2 - 16).

Regarding the possession of marijuana charge, Plaintiff explained how he was allegedly

found in possession.

> Q:   Well, one of the charges that had been brought against you in December 2006, was possession of marijuana.

> A:   Which was dismissed.

> Q:   Well, were you actually in possession of marijuana?

>     MS. KRUGER:   Objection, relevance.  You can answer it.

>     THE WITNESS:   No.  I wasn't in possession of marijuana.

>     BY MR. STEPHENS:

> Q:   So was that a trumped-up charge or what?

> A:   That's what I'm saying.  I mean, he found it in the car.  I was in the back seat of the police car when he found it.  And you can – – I mean, if you wanted to pull those records, the police had to look over

10

the car, and the amount of marijuana that was found wasn't even enough for them to test.  That's why it was dismissed.

I mean, I don't really know why it was dismissed, all I know is it was dismissed.  And the amount of marijuana they found was so insignificant that they couldn't bring the charges against me – – or they didn't.  They chose not to.

*Id.*, Ex. 2 (Weathers Dep. 38:13 - 39:15).

Defendant argues Plaintiff's dismissal from Cracker Barrel cannot affirmatively be attributed to Plaintiff's arrest due to the outstanding warrant from Maryland.  "Plaintiff claims that his incarceration due to the outstanding warrant was the cause of his termination from 7-Eleven; however, he overlooks the possibility, if not likelihood, that his traffic violations and marijuana charges could have been enough for Cracker Barrel to find a violation of its policy."  Def.'s Mem. at 6.

What is undefined is the exact policy of Cracker Barrel.  Apparently Plaintiff did not produce a copy of Cracker Barrel's written policy.  The only evidence about the policy is Plaintiff's deposition testimony and Plaintiff's answers to Defendant's interrogatory.  In response to Interrogatory No. 8, Plaintiff provided a multi-bullet answer.  One of those bullets states,

Cracker Barrel has a policy that any employee that damages company image will be terminated.  My false imprisonment fell under this company provision and I was fired.  The days following the arrest my mug shot (which is available on the internet) was printed and displayed on the wall at the Cracker Barrel.

Def.'s Mem., Ex. 1 at 4; Document No. 30-2 at 4.

Defendant contends, by driving on a suspended license, Plaintiff damaged Cracker Barrel's image.  Further, by also possessing marijuana, Plaintiff damaged Cracker Barrel's image.

11

Attached to Defendant's Reply are three pages from the Office of the Sheriff, Mecklenburg County, North Carolina.  The third page lists the charges against Plaintiff.  The first charge is "driving while license revoked."  The second charge is possession of marijuana, a misdemeanor.  The third charge is "fugitive/extradition other state."  Document No. 31, Ex. at 3. While driving on a revoked license and possessing marijuana are actions which cannot be condoned and which Cracker Barrel likely would encourage its employees to avoid, the Court finds the third charge — being a fugitive — is more likely the status that tarnished or damaged Cracker Barrel's image and led to Plaintiff's termination.  Defendant's request to exclude from trial any evidence suggesting Cracker Barrel terminated Plaintiff due to the outstanding warrant from Maryland will be denied.

For the foregoing reasons, an Order will be entered granting in part and denying in part Defendant's Motion *in Limine*.


September 11, 2009                                    /s/
_____        _____
        Date                                  WILLIAM CONNELLY
                                    UNITED STATES MAGISTRATE JUDGE


12